We'll hear counsel in Pamela Jacobs against New York City Department of Education. Go ahead, Mr. Seltzer. Good morning, and may it please the court. My name is Steven Seltzer, and I represent the appellant Pamela Jacobs. There were three principal instances in our view of the lower court misapprehending and mistreating the evidence at the summary judgment stage. At the prima facie stage, the appellant submitted statements by the final decision maker, multiple statements that undisputedly evidenced discriminatory animus, in assessing that evidence, and some of those statements were in the six to nine months prior to the issuance of the termination letter, and on one occasion, the troubling statements were made when the appellant Bear with me one second. Let's just make sure everybody's in who's supposed to be in, and everybody who's supposed to be out is out. Go ahead. Thank you, Your Honor. On one occasion, in approaching the decision maker, Ms. Marchese, the appellant brought up the problems she was having. She went to the nursing director and said, I'm having this issue, I'm being accused of this, I'm being told I did that. I would ask for your assistance or intervention in the matter, and then we have discriminatory comments. So in our view, given the burden at this stage, at the prima facie stage, which is light, given the obligation by the reviewing court to construe the evidence in the light most favorable to the non-moving party, and to grant all reasonable inferences in favor of that party, given the nature of the remarks, given that those remarks occurred or there's evidence that they occurred in the context of the issues that were ultimately alleged by the Department of Education to give rise to the termination. That in the conclusion that there were stray remarks is error. It certainly could not be concluded as a matter of law. It should be a jury question, and it should be- That's the prima facie case. That's the prima facie case. Why don't you go to the other one, the legitimate non-discriminatory reason. Yes, yes, Your Honor. And in our view, the summary judgment assessment should have ended at the legitimate non-discriminatory reason stage, because there was an admissibility requirement. And in our view, the lower court excused the movement from complying in any way with the admissibility requirement. We did not have any testimony, either in deposition form or in declaration or sworn statement form, from the actual decision maker. There was no testimony from anyone related to the decision-making process, and there was an order below precluding the usage of that testimony, due to non-appearance for depositions. The witnesses couldn't be located, and such. I thought there was direct evidence about your client speaking to the mother of one of the individuals, and stating that if her daughter, I guess it was her daughter, persisted to the effect, or at least it could be inferred that if her daughter persisted, that she would reveal that this child had been abused by her father. And that was sort of either a direct or an implied threat to the mother of this child. And that was in the record, was it not? It was not in the record in the manner necessary for the movement to attain summary judgment. What's critical here, Your Honor, is the why. Why did the employer take the action that it took? There was no testimony, no sworn statement from the decision maker, from the action taker, stating this is why we did what we did. This is the- The closest they got to that. The closest they got to that, Your Honor, was a termination letter issued by the decision maker, who never provided testimony. And their ability, in our view, to attain summary judgment rests entirely on their ability to put that document, that termination letter, that December 2010 termination letter, in admissible form before the court. They made, the movement made, for whatever reason, no effort to do that. There is- These were letters, right? These were documents. This is a letter, but it's offered for the truth, and they had a major hearsay problem. They had to get around it. They did not try to go under 8036 under the business records exception. They needed a statement, an affidavit, a declaration from a custodian of records indicating that this is a document prepared in the ordinary course of business. And this is how it's maintained, and it was maintained in the ordinary course of department business. That was- Can't a court assume that? I mean, can't a court look at it? And reach that conclusion without it actually having been stated formally? I would respectfully say no. It's the movement's obligation, your honor, to, when asking for summary judgment, to submit that evidence in proper admissible form. And it's not a requirement that should be excused. Doesn't the Rule 56 term speak in terms of whether it's capable of being in admissible form? As I review the cases interpreting Rule 56, your honor, cited in the brief, the evidence has to be non-hearsay, and that has to be demonstrated. Under the business records exception, right? I mean, you said that as much here. You said if they had an affidavit saying made and kept in the ordinary course of business and so forth, recording simultaneously, and that record, that the predicate had been laid, you wouldn't have an objection. My response is, you can't assume in favor of the movement in the summary judgment context. We can't make that type of a leap for the movement. The inference has to be granted to the non-movement that for whatever reason, they could not do that. Even so, if I could move on very briefly just to the pretext stage, and I'll keep that very brief, even if the movement gets past the legitimate reasons admissibility issue. The global error that we contend the lower court made was that it viewed the evidence piece by piece. There was substantial evidence in the record to cast doubt upon the credibility, the validity of the reasons combined with discriminatory comments in our view, particularly under the Schreiber-Ostrowski line of case law that we cite in the brief. In our view, that should have been looked at as a collective, as a whole, and it's for the jury to decide the weight. Thank you very much, your honors. Thank you. Before you sit down, may I? With the presiding commission? Yes, your honor. A quick question, was the, or a set of questions, was the objection that you are articulating quite forcefully here made to the district court? That is, the evidence that the court would have to rely on is not in an admissible form. It was, your honor. And if the author of the letter were present or had given a deposition essentially reciting the letter, would that have satisfied the concern that you are addressing? I would not have made the argument in that case, your honor. Thank you very much. Thank you, Mr. Seltzer, very much. You've reserved some time. May it please the court, I'm Janet Zalian for the DOE. There is no question of fact, material question of fact, as to pretext here. A disabled employee is not insulated from the consequences of committing a fireable offense. Here she admits making a phone call to the parent. There's no question that she made a phone call to the parent on the day of her disciplinary meeting about the corporal punishment allegation. The OSI investigation and that investigator is not alleged to have made any reference or to have even known about her disability of multiple sclerosis. There is no evidence of any involvement of disability in the OSI's report. And the OSI's report, which, as the appellant can't deny, recommended punishment up to termination because this is a situation where what they're finding was, was that this conduct impeded the investigatory and disciplinary process. Certainly, in the same way as this court's prior McPherson case, the DOE's legitimate institutional concerns, as the phrase that the court used there, involved preventing this kind of conduct that deters children and parents from reporting misconduct and participating in a disciplinary process. There is no order of preclusion here. It cannot be the case that every time a witness can't be located, that a plaintiff automatically gets summary judgment denied, because the, the ruling as- Are you talking now about the, the mother? Or are you talking- No, we're talking about Marchese, the decision maker. Oh, okay. That Marchese couldn't be located, and what the, what the order was that the appellant is characterizing as a preclusion order, but what it said was that if she is located, which is, which is, it's understood that nobody can locate her, that she can't be used, her testimony can't be used in the summary judgment motion, unless there's a deposition, unless, unless the plaintiff gets a chance to depose her. But every, but there, but in this case, the admissibility issues and the fact that the, nobody from the DOE's records office, assuming that this letter even went to some kind of records office, was, was asked to put, to lay out a foundation under Rule 803. That still does not lay, does not create an issue of fact as to whether there's pretext here. Some remarks made a while ago, and, and, if Marchese didn't like the fact that this person was hired, she successfully retained her job for seven years. So Marchese is not out for blood in, in those remarks. The, so the, so there is a situation where somebody who this person hired, doesn't particularly like, independently of her feelings about this person's MS, commits a fireable offense, and is, and is fired. Does the court have any further questions? In that case, we'll ask that the court affirm. Thank you very much. Mr. Selzer? Very briefly, I appreciate counsel's arguments and questions as to whether Marchese might or might not have done, had she been out for blood. That was not present, presented on the record. As a whole, we have evidence of these statements. There are admissibility problems. There are issues with the credence and the validity of the reasons asserted, or that are attempted to be asserted for this termination. And given that it's appropriate that the jury make the, that the jury at a trial make the final decision here, I would rest at this time. Thank you, your honors. Thank you, Mr. Selzer, very much. Reserve decision.